FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 2 8 2015

JAMES N. HATTEN, Clerk
By: Deputy Clerk

*ORIGINAL*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION



|  |  |
|---|---|
| ———————————————— x | **1:15 - MI - 0044** |
| In re SUBPOENA *AD TESTIFICANDUM* TO JAMES HARRIS | : Misc. Civil Action No. |
|  | : Civil Action No. 13-cv-2519 GPC (WVG) (S.D. Cal.) |
| ———————————————— | : |
| ART COHEN, Individually and on Behalf of All Others Similarly Situated, | : REQUEST FOR ORDER TO SHOW CAUSE WHY NON-PARTY JAMES HARRIS SHOULD NOT BE HELD IN CONTEMPT AND MEMORANDUM OF LAW IN SUPPORT |
| Plaintiff, | : |
| vs. | : |
| DONALD J. TRUMP, | : |
| Defendant. | : |
| ———————————————— x |  |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION............................................................................... 1

II.    BACKGROUND................................................................................. 3

    A.    Harris's Role as Trump University's Top Instructor............................. 3

    B.    Movant's Efforts to Obtain Harris's Deposition Testimony ................. 5

III.   APPLICABLE LEGAL STANDARD ............................................................ 6

IV.    ARGUMENT ..................................................................................... 8

    A.    Harris Was Properly Served with a Valid Subpoena............................. 8

    B.    This Court Has Authority to Issue an Order to Show Cause and
         to Find Harris in Contempt and Subject to Appropriate Remedy ........ 9

V.     CONCLUSION ................................................................................. 11

- i -

# TABLE OF AUTHORITIES

Page

## CASES

*Agincourt Gaming, LLC v. Zynga, Inc.*,
No. 14-CV-0708, 2014 U.S. Dist. LEXIS 114348, 2014 WL 4079555
(D. Nev. Aug. 15, 2014)........................................................................................ 6

*Cohen v. Trump*,
No. 3:13-cv-02519-GPC-WVG (S.D. Cal.)........................................................... 1

*Collagen Nutraceuticals, Inc. v. Neocell Corp.*,
No. 09-cv-2188-DMS WVG), 2010 U.S. Dist. LEXIS 98228
(S.D. Cal. Sept. 20, 2010) ..................................................................................... 8

*Higginbotham v. KCS Int'l, Inc.*,
202 F.R.D. 444 (D. Md. 2001)............................................................................... 7

*Huene v. United States Dep't of Treasury*,
No. 2:11-cv-2110 JAM AC PS, 2013 U.S. Dist. LEXIS 13803
(E.D. Cal. Jan. 31, 2013)....................................................................................... 7

*Johnson v. Simmons*,
No. 1:13cv205-HSD-RHW, 2015 U.S. Dist. LEXIS 59964
(S.D. Miss. May 7, 2015)....................................................................................... 6

*Makaeff v. Trump University, LLC*,
No. 3:10-cv-0940-GPC-WVG (S.D. Cal.)............................................................. 5

*Morgutia-Johnson v. City of Fresno*,
No. 1:14-cv-00127-LJO-SKO, 2015 U.S. Dist. LEXIS 28535
(E.D. Cal. Mar. 9, 2015)...................................................................................... 10

*United States SEC v. Hyatt*,
621 F.3d 687 (7th Cir. 2010)................................................................................. 7

## STATUTES, RULES AND REGULATIONS

18 U.S.C.
§1962 ..................................................................................................................... 1

Federal Rules of Civil Procedure
Rule 45 ........................................................................................................... 6, 9
Rule 45(a) ...................................................................................................... 6, 7
Rule 45(a)(1)(A)(i) ............................................................................................. 8
Rule 45(a)(1)(A)(ii) ............................................................................................ 8
Rule 45(a)(1)(A)(iii) ........................................................................................... 8
Rule 45(a)(1)(A)(iv) ........................................................................................... 8
Rule 45(a)(1)(B) .................................................................................................. 8
Rule 45(b)(1) ....................................................................................................... 8
Rule 45(c)(1)(a) ................................................................................................... 9
Rule 45(d) ............................................................................................................ 8
Rule 45(e) ............................................................................................................ 8
Rule 45(g) .................................................................................................. 6, 9, 10
Rule 45 Notes of Advisory Committee in 2011 Amendments ........................... 7
Rule 45 Notes of Advisory Committee in 2013 Amendments ........................... 9

Plaintiff and Class Representative Art Cohen ("Movant"), by and through his
undersigned counsel, respectfully moves for an Order to Show Cause why non-party
James Harris ("Harris") should not be held in contempt for failure to comply with
Movant's subpoena *ad testificandum* requiring him to appear for a deposition on April
23, 2015, in Atlanta, Georgia in the underlying action. Movant relies on the following
memorandum of law and the accompanying declaration and exhibits filed herewith.
Movant submits a proposed Order to Show Cause and requests that the Court enter
that order.

## I.   INTRODUCTION

Movant is plaintiff and class representative in the underlying action, *Cohen v.
Trump*, No. 3:13-cv-02519-GPC-WVG (S.D. Cal.), brought pursuant to 18 U.S.C.
§1962, pending in the District Court for the Southern District of California. The
*Cohen* action alleges that defendant Donald J. Trump ("Trump") ensnared Movant and
thousands of other student-victims in a nationwide fraudulent scheme to sell real
estate seminars and mentorships by trading on the Trump moniker. As part of this
scheme, hundreds of "Live Events" seminars were held across the country by
instructors purportedly "hand-picked" by Trump and who taught his techniques and
secrets. Movant alleges that while Trump was the key sales pitch, he did not

- 1 -

contribute in any meaningful way to the curriculum, students did not learn his secrets and he did not handpick the instructors.

In pursuit of relevant evidence to support his class claim, Movant served a deposition subpoena on non-party Harris, Trump University's former "top instructor" responsible for speaking at Live Events around the country. False and misleading statements delivered by Harris about Trump's involvement in Trump University, his contributions to the "curriculum," and the access to Trump secrets and advisors that awaited purchasers of Trump University products, were essential to the scheme to defraud and are expected to be presented as evidence at trial.

Movant sought to personally serve Harris with a subpoena beginning February 2, 2015. Approximately six weeks later a process server successfully served him at a conference at an Atlanta Courtyard Marriott where he was speaking. The deposition subpoena required Harris's appearance at Robbins Geller Rudman & Dowd LLP's ("Robbins Geller") Atlanta offices on April 23, 2015. Harris failed to move for a protective order or other relief excusing his appearance, ignored all communication efforts by counsel, and failed to appear at the designated time.

Movant respectfully requests that this Court issue an Order to Show Cause why Harris should not be held in contempt for his failure to appear at his deposition. Movant requests that the order advise Harris that if he is found in contempt, the Court

- 2 -

may enter a further order intended to obtain compliance and to punish any further non-compliance, including but not limited to: (1) requiring Harris to sit for his deposition; (2) directing Harris to pay for the reasonable costs incurred by movant in connection with these proceedings to obtain compliance; and (3) any other remedy this Court finds appropriate. In light of the July 2, 2015 discovery cut off in the underlying action, Movant requests that the Court set a hearing date for the Order to Show Cause as soon as practicable.

## II.   BACKGROUND

### A.   Harris's Role as Trump University's Top Instructor

Trump marketed his "University" through advertisements and direct mailers to potential victims encouraging them to come to a free event to learn "the kind of proven expertise contained in Donald Trump's powerful techniques and strategies." Ex. 12.[1]   At the free "Preview," attendees were sold the $1,495 three-day "Fulfillment;" from there, students were upsold to the Elite Packages, including the $34,995 Gold Elite mentorship.  Ex. 13 at 5.

At these Live Events, Harris claimed to be "Trump's top nationwide instructor" and that "Donald Trump picked [him]."  Ex. 14; Ex. 15 at 2.  He told students that he

---

[1]   Here, and throughout, unless otherwise noted, references to "Ex." are to the Exhibits attached to the Declaration of Daniel J. Pfefferbaum ("Pfefferbaum Decl."), filed concurrently herewith.

1033112_1

would train them to "work a couple of hours a week, bring 25 grand in for you and your family a month." Ex. 16 at TRUMP 00137413. Harris was so successful at selling Trump University products that a transcript of his presentation was used as a training tool for other speakers. Ex. 16.

Based on documents produced to date, Harris is expected to provide testimony on numerous issues in this action, including but not limited to, the selection, criteria and training of speakers; Trump University's marketing efforts and target demographics; the source, development, and contents of the scripts and materials used at Live Events; the sales process and commission structure; and techniques employed by Trump University employees to pressure Class Members into purchases.[2] In sum, Harris was integrally involved in the delivery of Trump University's pitch at Live Events, he was its most prolific speaker and he is expected to provide highly relevant

---

[2] The relevance of Harris's testimony is not currently in dispute. Nonetheless, at the Court's request, Movant is willing to file under seal additional supporting documents marked "Confidential" by Trump and Trump University, including email, Live Event transcripts, Live Event recordings and other internal documents, evidencing Harris's role in the operation of Trump University Live Events. The documents attached to the Herman Declaration as Exhibits 12 through 16, though some have "Confidential" stamps, have been publicly filed in an action brought by the New York Attorney General's office against Trump Entrepreneur Initiative f/k/a Trump University and Donald Trump, *People of the State of New York v. The Trump Entrepreneur Initiative LLC*, No. 2013/451463 (filed Aug. 24, 2013, Supreme Ct. of New York, Cnty. of New York).

- 4 -

testimony on nearly all aspects of the misrepresentations made to Class Members at Live Events.

## B.    Movant's Efforts to Obtain Harris's Deposition Testimony

On February 2, 2015, counsel for Movant issued a subpoena for Harris and worked with a litigation support company with process servers in the Atlanta area who made repeated attempts to locate Harris at his last known residence (his girlfriend's home), his mother's home and at a business address registered to him.[3]   Ex. 1. Harris's internet advertisements and social media postings indicated that he was using an alias, "Jim Harrison," and was in the Atlanta area. Exs. 2-3.

On March 11, 2015, a website featuring a video of Harris, webaforce.com, indicated that he would be speaking in Atlanta the following day. Ex. 4. Movant immediately reissued an amended subpoena setting the deposition for April 23, 2015, and served it on defendant. Ex. 5. Harris was personally served by the process server on March 12, 2015, at 1:45 p.m., at the Courtyard Marriott in Atlanta, Georgia. Ex. 6. Due to the difficulties experienced in serving Harris over the past two years, the

---

[3]    The pursuit to obtain Harris's testimony began in May 2012 in the related *Makaeff v. Trump University, LLC*, No. 3:10-cv-0940-GPC-WVG (S.D. Cal.).   Counsel for movant are also lead counsel in that action and experienced similar difficulties serving Harris in that action as well. Ex. 8. His testimony was not obtained in the related action.

1033112_1

process server took a picture of Harris at the time and provided it to Movant's counsel. Ex. 7.

In the weeks leading up to the scheduled deposition, counsel for Movant reached out to Harris via email and social media message. Exs. 9-10. Harris did not respond. He did not seek a protective order or file a motion to quash. On the day of the deposition, counsel for Movant and the defendant in the underlying action were present at the specified time, 9:00 a.m. Pfefferbaum Decl., ¶14. Just after 10:00 a.m., counsel for both parties went on the record to indicate Harris's failure to appear. Ex. 11. Movant's counsel remained at the deposition location until approximately 2:00 p.m., Harris never arrived. *Id.*, ¶16.

## III. APPLICABLE LEGAL STANDARD

Pursuant to Rule 45, discovery may be obtained from a non-party through service of a subpoena commanding attendance at a deposition. Fed. R. Civ. P. 45(a). "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g); *Johnson v. Simmons*, No. 1:13cv205-HSD-RHW, 2015 U.S. Dist. LEXIS 59964, at *4 (S.D. Miss. May 7, 2015) (motion to enforce must be filed in court where compliance is required); *see also Agincourt*

- 6 -

*Gaming, LLC v. Zynga, Inc.*, No. 14-CV-0708, 2014 U.S. Dist. LEXIS 114348, 2014
WL 4079555, at *3 (D. Nev. Aug. 15, 2014).

Subpoenas issued by attorneys are issued on behalf of the court and are treated
as orders of the court. *United States SEC v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010);
*Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) (citing Rule
45(a) Advisory Committee Notes to 1991 Amendment ("'Although the subpoena is in
a sense the command of the attorney who completes the form, defiance of a subpoena
is nevertheless an act of defiance of a court order and exposes the defiant witness to
contempt sanctions.'")). Generally, unless a party or witness files a motion for a
protective order and seeks and obtains a stay prior to the deposition, a party or witness
has no basis to refuse to attend a properly noticed deposition. William W. Schwarzer,
A. Wallace Tashima, James M. Wagstaffe, California Practice Guide: Federal Civil
Procedure Before Trial ¶11:1166 (The Rutter Group 2014) ("Cal. Practice Guide")
("A party served with a deposition notice or discovery request must obtain a
protective order (*e.g.*, a stay of the deposition pending hearing on the motion) before
the date set for the discovery response or deposition."); *Huene v. United States Dep't
of Treasury*, No. 2:11-cv-2110 JAM AC PS, 2013 U.S. Dist. LEXIS 13803, at *7-*8,
(E.D. Cal. Jan. 31, 2013).

- 7 -

## IV.   ARGUMENT

### A.   Harris Was Properly Served with a Valid Subpoena

Movant caused a valid subpoena to be personally served on Harris and he is subject to this Court's jurisdiction. Every deposition subpoena must state the court from which it issued, state the title of the action and its civil-action number, specify to each person to whom it is directed the time and place set for the deposition, and set out the text of Rule 45(d) and (e). Fed. R. Civ. P. 45(a)(1)(A)(i)-(iv). A subpoena commanding a deposition must also set forth the method for recording the testimony. Fed. R. Civ. P. 45(a)(1)(B). Serving a subpoena requires personal service. Fed. R. Civ. P. 45(b)(1); *Collagen Nutraceuticals, Inc. v. Neocell Corp.*, No. 09-cv-2188-DMS WVG), 2010 U.S. Dist. LEXIS 98228, at *3 (S.D. Cal. Sept. 20, 2010).

Here, Movant properly issued a subpoena from the court where this action is pending, the United States District Court for the Southern District of California, containing all the required elements: Harris was instructed to appear at Robbins Geller Rudman & Dowd LLP, 3424 Peachtree Rd., NE, Suite 1650, Atlanta, Georgia 30326, on April 23, 2015, at 9:00 a.m. Ex. 5. The subpoena further instructed Harris that the subpoena would be recorded stenographically, LiveNote, and videotaped. *Id.*

The subpoena was properly served on Harris. After extensive efforts, Harris was personally served with the subpoena at 1:45 p.m. on March 12, 2015, at the

- 8 -

1033112_1

Courtyard Marriott. Ex. 6. This fact is verified by a photo of Harris taken by the process server at the time of service. Ex. 7. Indeed this photo was taken for the very reason that Movant had difficulty serving Harris.

The deposition location is proper. Robbins Geller's Atlanta offices is within 100 miles of where Harris resides, is employed or regularly transacts business. *See* Fed. R. Civ. P. 45(c)(1)(a). This location is approximately 8 miles from where Harris was served while speaking at a conference, less than 10 miles from his last known address (his girlfriend's residence), less than 10 miles from the address with which his business is registered and 40 miles from Harris's mother's address. Pfefferbaum Decl., ¶13. Additionally, a social media profiles list his home as Atlanta. Exs. 2-3.

## B. This Court Has Authority to Issue an Order to Show Cause and to Find Harris in Contempt and Subject to Appropriate Remedy

When a third-party witness refuses to comply with a subpoena, this Court is authorized to issue an Order to Show Cause why the witness should not be found in contempt of court. Fed. R. Civ. P. 45(g). "[C]ontempt sanctions may be applied to a person who disobeys a subpoena-related order, as well as one who fails entirely to obey a subpoena. . . . Often contempt proceedings will be initiated by an order to show cause . . . ." Fed. R. Civ. P. 45 Notes of Advisory Committee in 2013 Amendments.

- 9 -

1033112_1

Harris's failure to appear or seek a protective order, was "without adequate excuse" and constitutes grounds for a finding of contempt. *See* Fed. R. Civ. P. 45(g); *see also Morgutia-Johnson v. City of Fresno*, No. 1:14-cv-00127-LJO-SKO, 2015 U.S. Dist. LEXIS 28535, at *6-*9 (E.D. Cal. Mar. 9, 2015). Movant's subpoena is deemed a court order that cannot be defied without a court order excusing the deponent's appearance. Harris flat out defied the subpoena: He did not move for a protective order or motion to quash, or seek any other relief from the subpoena. He failed to contact counsel, he did not respond to counsel's efforts to contact him and he failed to show up for his deposition. Such willful defiance is contemptuous.

Furthermore, Harris's prior failure to appear for the deposition as commanded by the subpoena without having obtained – or even sought – relief from that obligation, precludes Harris from seeking objection now.[4] Cal. Practice Guide, ¶11:1166.

Movant respectfully requests that the Court enter an order requiring Harris to show cause why he should not be held in contempt. Movant also requests that the order to show cause advise Harris that if he is found in contempt, the Court may enter

---

[4] No legitimate argument could be presented on the grounds of relevance, as Harris was a prolific speaker from Trump University and is expected to testify about evidence and issues central to Movant's allegations in the underlying action.

a further order intended to obtain compliance and to punish any further refusal to comply with this Court's order, including but not limited to:

1.      Requiring Harris to appear for his deposition;

2.      Directing Harris to pay the reasonable costs incurred by Movant in connection with these proceedings to obtain compliance; and

3.      Any other remedy this Court finds appropriate.

A proposed order consistent with the above is submitted herewith.

## V.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court enter an Order to Show Cause why Harris should not be found in contempt consistent with the attached proposed order and schedule a hearing on the Order to Show Cause as soon as practicable.

DATED:  May 28, 2015              Respectfully submitted,

                                 ROBBINS GELLER RUDMAN
                                   & DOWD LLP
                                 JOHN C. HERMAN
                                 (Georgia Bar No. 348370)


                                 _____
                                        JOHN C. HERMAN

1033112_1

Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)
jherman@rgrdlaw.com

Counsel for Movant

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Of Counsel

- 12 -

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

|  | x |  |
|---|---|---|
| In re SUBPOENA *AD TESTIFICANDUM* TO JAMES HARRIS | : : : : | Misc. Civil Action No.<br><br>Civil Action No. 13-cv-2519 GPC (WVG) (S.D. Cal.) |
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP,<br><br>Defendant. | : : : : : : : : : : : x | DECLARATION OF DANIEL J. PFEFFERBAUM IN SUPPORT OF REQUEST FOR ORDER TO SHOW CAUSE WHY NON-PARTY JAMES HARRIS SHOULD NOT BE HELD IN CONTEMPT AND MEMORANDUM OF LAW IN SUPPORT |

1033140_1

I, Daniel J. Pfefferbaum, declare as follows:

1.      I am a member of the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), which serves as Court-appointed Class Counsel in the underlying action, *Cohen v. Trump*, No. 3:13-cv-02519-GPC-WVG (S.D. Cal.), pending in the District Court for the Southern District of California, the court from which the subpoena sought to be enforced was issued. I am duly licensed to practice before all state and federal courts in California.[1] The facts stated in this declaration are true and based upon my own personal knowledge and, if called to testify to them, I would competently do so.

2.      I submit this declaration in support of Request for Order to Show Cause Why Non-Party James Harris Should Not Be Held in Contempt.

3.      Exhibit 1 is a true and correct copy of an email exchange dated February 2, 2015 to February 9, 2015, between Melissa Bacci, paralegal at Robbins Geller, requesting that Janis Dingman at Class Action Research facilitate service of James Harris, detailing the efforts of Ms. Dingman to locate Mr. Harris and informing Movant's counsel that Mr. Harris was using the alias "Harrison."

---

[1]  Additionally, I intend to seek admission to the District Court for the Northern District of Georgia *pro hac vice*.

- 1 -

4.       Exhibit 2 is a true and correct copy of a Facebook profile for "James Harrison" which includes photos of Mr. Harris and his girlfriend, Kasia Palmaka which indicates that he "Lives in Atlanta, Georgia."

5.       Exhibit 3 is a true and correct copy of a LinkedIn profile for "Jimmy Harrison" which includes a picture of Mr. Harris, links to websites featuring videos of Harris and states that he lives in the "Greater Atlanta Area."

6.       Exhibit 4 is a true and correct copy of webaforce.com featuring a video of Mr. Harris and indicating that Webaforce was putting on conferences March 7-12, 2015, in Atlanta, Georgia. In the video, Mr. Harris refers to himself by the alias Jim Harrison.

7.       Exhibit 5 is a true and correct copy of the amended deposition subpoena, signed by Rachel Jensen on March 11, 2015, noticing Mr. Harris's deposition for April 23, 2015, at 9:00 a.m., at the Atlanta offices of Robbins Geller.

8.       Exhibit 6 is a true and correct copy of the proof of service signed by Amanda Dolin indicating that Mr. Harris was served on March 12, 2015, at 1:45 p.m., at the Courtyard Marriott Midtown Georgia Tech.

9.       Exhibit 7 is a true and correct copy of an email dated March 12, 2015, from Janis Dingman to Rachel Jensen, Melissa Bacci and Jason Forge attaching a

- 2 -

1033140_1
1033140_1

photo captured by the process server Amanda Dolin, at the same time she served Mr. Harris at the Courtyard Marriott showing Mr. Harris in front of a webaforce.com banner.

10.     Exhibit 8 is a true and correct copy of a Melvin L. Hicks Declaration of Due Diligence, dated September 7, 2012, in the related *Makaeff v. Trump University, LLC*, No. 3:10-cv-0940-GPC-WVG (S.D. Cal.) action stating that Hicks was unable to effect personal service on Mr. Harris.

11.     Exhibit 9 is a true and correct copy of an email from myself to Mr. Harris at his email address moneymotivator@gmail.com, dated April 2, 2015. Mr. Harris did not respond.

12.     Exhibit 10 is a true and correct copy of a print out of a message sent by myself to Mr. Harris on April 15, 2015 via Facebook messenger. Mr. Harris did not respond.

13.     Google Maps provides the following distances from the Robbins Geller Atlanta office: (1) Harris's last known residence, 870 Inman Village Parkway NE, Atlanta, GA 30307 – 9.2 miles; (2) Harris's registered business address, 245 Highland Avenue NE, Atlanta, GA 30312 – 8.2 miles; (3) location where Harris was served, Courtyard Marriott Atlanta, 1132 Techwood Drive NW, Atlanta, GA 30326 – 8.4

- 3 -

miles; (4) Harris's mother's home, 3417 Friendship Farm Drive, Buford, GA 30519 – 38.5 miles.

14.     On the day of the deposition, April 23, 2015, I was present at Robbins Geller's Atlanta offices. Also present was Benjamin Morris for defendant. The videographer and court reporter set their equipment and were prepared to commence with a deposition at 9:00 a.m.

15.     Exhibit 11 is a true and correct copy of the statement of non-appearance by Mr. Harris, entered at 10:06 a.m. by counsel present at the deposition.

16.     I remained at the deposition location until approximately 2:00 p.m. and Mr. Harris never arrived.

17.     The following Exhibits are true and correct copies of certain exhibits attached to the Verified Petition filed by the New York State Attorney General in *People of the State of New York v. The Trump Entrepreneur Initiative LLC*, No. 2013/451463 (filed Aug. 24, 2013, Supreme Ct. of New York, Cnty. of New York) ("NY AG Verified Petition"):

(a)     Exhibit 12 – Trump University advertisements (attached as Ex. M3 to NY AG Verified Petition);

- 4 -

1033140_1
1033140_1

(b)     Exhibit 13 – Trump University 2010 Playbook (attached as Ex. V to NY AG Verified Petition);

(c)     Exhibit 14 – A portion of a transcript of a James Harris presentation for Trump University, from Boston, Massachusetts, dated November 10-13, 2008 (attached as NY AG Ex. H18 to NY AG Verified Petition);

(d)     Exhibit 15 – A portion of a transcript of a James Harris presentation for Trump University, from Park Ridge, New Jersey, dated November 5, 2008 (attached as NY AG Ex. H20 to NY AG Verified Petition); and

(e)     Exhibit 16 – email from David Early to gmartin8@cfl.rr.com; MelvRi7@aol.com; klucas18@cs.com; and Scott Leitzell, dated December 19, 2008, attaching James Harris presentation transcript (attached as Ex. T1 to NY AG Verified Petition).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of May, 2015, at San Francisco, California.

_____

DANIEL J. PFEFFERBAUM

- 5 -

1033140_1
1033140_1